Carol A. RUBIN, individually and as the Maternal Parent of Rebecca B. Rubin, an infant, under the age of Fourteen years, Plaintiffs,

v.

Philip SMITH, Sr., individually and in his official capacity as a Police Officer of the Town of Salem, and Fred Rheault, individually and in his official capacity as a Police Officer of the Town of Salem, and James Ross, individually and in his official capacity as Chief of Police of the Town of Salem, and Town of Salem, a municipal corporation of the State of New Hampshire, as an individual, and Dan Stebbens, individually and in his official capacity with the Connecticut State Police, and John Ragazzi, individually and in his official capacity with the Connecticut State Police, and Harvey Rubin and Quentin Rubin, Defendants.

Civ. No. 92–273–SD.

United States District Court,
D. New Hampshire.

April 7, 1993.

Carol A. Rubin, pro se.

Richard Y. Uchida, Concord, NH, for Rebecca Rubin.

Margaret Quilter Chapple, Office of Atty. Gen., Hartford, CT, for Ragazzi & Stebbens.

Wayne C. Beyer, Concord, NH, for Salem, Ross, Rheault, Smith.

Theodore Wadleigh, Manchester, NH, for Ragazzi & Stebbens.

Robert Larson, Concord, NH, Jonathan Katz, New Haven, CT, for Quentin & Harvey Rubin.

## ORDER

DEVINE, Senior District Judge.

This order addresses the motion to dismiss by defendants Philip Smith, Sr., Fred Rheault, James Ross, and the Town of Salem, New Hampshire, to which plaintiff Carol Rubin objects. In this civil rights action, plaintiffs allege that Rebecca Rubin was taken from Carol Rubin by the defendants, in violation, inter alia, of plaintiffs' federally protected right of access to the courts and, further, that plaintiffs were deprived of both the right to equal protection under the law and a constitutionally protected liberty interest, without due process of law.

### Factual Background

Defendant Harvey Rubin and plaintiff Carol Rubin were granted a divorce by the Superior Court for the Judicial District of Danbury, Connecticut, in 1985. Custody of Rebecca Rubin, the only child of the marriage, was granted to Carol Rubin, with visitation rights to Harvey Rubin.

In January of 1990, the Connecticut Superior Court granted temporary custody of Rebecca to Harvey Rubin following a hearing which Carol Rubin did not attend. Plaintiffs state that they had "legally" moved to Salem, New Hampshire, on December 15, 1989, and that Carol Rubin had no notice of these Connecticut proceedings. Harvey Rubin was apparently unaware of plaintiffs' move to New Hampshire. Rebecca Rubin attended school in Salem until June 1990.

Allegedly, Harvey Rubin enlisted the aid of defendants Dan Stebbens and John Ragazzi, members of the Connecticut State Police, in his search for Carol and Rebecca Rubin.

These Connecticut police officers contacted the New Hampshire State Police and the Salem, New Hampshire, police in an attempt to find Carol and Rebecca Rubin. By June 13, 1990, Carol and Rebecca Rubin had been located in Salem by the Salem police. Plaintiffs state that several conversations ensued between the various defendants concerning plaintiffs' whereabouts and plans for Harvey Rubin to be given custody of Rebecca. Defendants Stebbens and Ragazzi contacted the Salem police and informed them that Harvey Rubin would come to Salem on June 13, 1990, to take custody of Rebecca in accordance with the Connecticut court order.

Defendants Philip Smith, Sr., and Fred Rheault, of the Salem police department, took Rebecca from her elementary school to the Salem police department. Some time later they gave custody of the child to Harvey Rubin. Carol Rubin states that she had no prior notice of this action. Harvey Rubin currently has physical custody of Rebecca, and they are living in Connecticut.

Carol Rubin, a pro se plaintiff, and Rebecca Rubin, represented by counsel, allege that defendants deprived the plaintiffs of their constitutionally protected interests while acting under color of state law. Specifically, they claim they were entitled to notice and an opportunity to be heard in New Hampshire before Harvey Rubin was given custody of Rebecca. Plaintiffs ask the court to grant an award of damages pursuant to 42 U.S.C. § 1983.[1] Jurisdiction is alleged under 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4).

### Discussion

Defendants move to dismiss pursuant to Rule 12(b), Fed.R.Civ.P. They seek dismissal on two grounds, stating: (1) the case falls within the domestic relations exception to federal jurisdiction, and (2) the court should abstain on a prudential basis.

The standard for granting a motion to dismiss is "not whether a plaintiff will ulti-

mately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Id.; Arroyo–Torres v. Ponce Fed. Bank, F.B.S.,* 918 F.2d 276, 277 (1st Cir. 1990); *Melo–Tone Vending, Inc. v. United States,* 666 F.2d 687, 688 (1st Cir.1981). The court must "accept all well-pled factual averments as true, and draw all reasonable inferences therefrom" in favor of the nonmoving party. *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989) (citing *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 276, 96 S.Ct. 2574, 2576, 49 L.Ed.2d 493 (1976)).

Of course, pro se complaints are held to "'less stringent standards.'" *United States v. Michaud,* 925 F.2d 37, 41 (1st Cir.1991) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)). In particular, the court recognizes that pro se complaints under section 1983 should be "liberally construed." *Ayala Serrano v. Lebron Gonzalez,* 909 F.2d 8, 12 (1st Cir.1990). Consequently, the court will apply these precepts in resolving the matter before it.

### I. The Domestic Relations Exception

■ The first issue the court addresses is whether this court has subject matter jurisdiction over the plaintiffs' claim. More specifically, we examine the question of whether the domestic relations exception to federal jurisdiction removes jurisdiction over this claim from the federal courts, as asserted by defendants. Defendants characterize plaintiffs' claim as "an attempt to frustrate enforcement of the custody decree" and assert that the domestic relations exception to federal jurisdiction bars this court from accept-

---

1. Section 1983 provides in part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

ing jurisdiction. Plaintiff argues that the domestic relations exception is inapplicable since the claim at issue is a section 1983 action for damages, and not a request for a custody determination.

"The domestic relations exception encompasses only cases involving the issuance of a divorce, alimony or child support decree." *Ankenbrandt v. Richards*, —— U.S. ——, ——, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992). Thus, in *Ankenbrandt*, the United States Supreme Court stated that the federal court could exercise diversity jurisdiction over a claim that the husband committed torts against the children. *Id.* The domestic relations exception was originally defined to encompass only suits over divorce and alimony. *Id.* at ——, 112 S.Ct. at 2209 (citing *Barber v. Barber*, 21 How. 582, 16 L.Ed. 226 (1859)). *Ankenbrandt* reaffirmed this "narrow range" of the domestic relations exception. *Ankenbrandt, supra*, —— U.S. at ——, 112 S.Ct. at 2214.

Moreover, the First Circuit has stated that the domestic relations exception applies to diversity cases, and not to cases arising under the constitution or laws of the United States. *Fernos–Lopez v. Figarella Lopez*, 929 F.2d 20, 22 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 244, 116 L.Ed.2d 199 (1991). Many other circuits also apply this rule. *Ingram v. Hayes*, 866 F.2d 368, 371 (11th Cir.1988); *Flood v. Braaten*, 727 F.2d 303, 308 (3d Cir.1984); *Franks v. Smith*, 717 F.2d 183 (5th Cir.1983). The domestic relations exception is "typically described as an 'exception to diversity jurisdiction.'" *Fernos–Lopez*, 929 F.2d at 22 (quoting *Sutter v. Pitts*, 639 F.2d 842, 843 (1st Cir.1981)).

In support of their motion, defendants assert that *Franks* counsels in favor of applying the domestic relations exception. Defendants' Motion at 4. However, *Franks* states, "[t]he mere fact that a claimed violation of constitutional rights arises in a domestic relations context does not bar review of those

constitutional issues.... We cannot say that the asserted [constitutional claims are] patently insubstantial or frivolous or [were] forwarded solely to create jurisdiction." *Franks, supra*, 717 F.2d at 185–86. Similarly, in the instant case, at this stage of the proceedings, there is no evidence before the court, nor can any inference be fairly drawn, to indicate that plaintiffs are seeking relief other than that which they have requested.

Although plaintiffs' claims arise out of a custody dispute, "adjudication of the alleged civil rights violation does not require the court to exercise jurisdiction over or resolve any of those state law matters within the scope of the domestic relations exception." *Hooks v. Hooks*, 771 F.2d 935, 942 (6th Cir. 1985).[2]

As was the case in *Fernos–Lopez*, the domestic relations exception is inapplicable here. First, this is not a diversity case. Plaintiffs' action is a section 1983 claim raising constitutional questions. Nowhere in their complaint have plaintiffs asked this court to adjudicate the matter of Rebecca's custody or otherwise delve into the parties' domestic affairs. Since the present case does not involve "the issuance [or modification] of a divorce, alimony, or child custody decree" the domestic relations exception is inapplicable. *Ankenbrandt, supra*, —— U.S. at ——, 112 S.Ct. at 2215. Plaintiffs have requested damages for deprivation, inter alia, of their constitutional interests without due process of law.

Examination of plaintiffs' claim in the light most favorable to the plaintiffs does not support the conclusion that this is actually a domestic relations case under the guise of a federal question or that the "constitutional violation has been forwarded solely for the purpose of attaining federal jurisdiction." *Franks v. Smith, supra*, 717 F.2d at 185. Therefore, the court concludes that the do-

---

**2.** In *Hooks*, the Sixth Circuit overturned the district court's pretrial disposition of plaintiff's § 1983 claim against certain defendants, and permitted dismissal for other defendants. *Hooks* involved one spouse's claim that she was unjustly deprived of custody of her child. Plaintiff alleged that a conspiracy existed between various

state officials and private parties. The court permitted the claim to go forward against only those defendants against whom plaintiff had alleged sufficient facts to permit a reasonable inference of conspiracy. *Hooks, supra*, 771 F.2d at 947.

mestic relations exception poses no jurisdictional bar.

## II. Abstention

Although subject matter jurisdiction may be proper, the defendants urge the court to abstain from exercising its jurisdiction for other reasons. In particular, defendants argue that the court should abstain from hearing this matter because: (1) the doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), requires abstention "where there are pending proceedings in state court regarding substantially the same issues," (2) under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), abstention may be required where the federal suit is " 'filed prior to effectuation of a divorce, alimony or child custody decree and the suit depended on a determination of the status of the parties,' " *Ankenbrandt, supra,* — U.S. at —, 112 S.Ct. at 2216, and (3) " 'the domestic relations subject matter [is] a sufficient basis in itself for abstaining.' " B. Atwood, "Domestic Relations Cases in Federal Court: Toward a Principled Exercise of Jurisdiction," 35 Hastings L.J. 571, 602–603 (March 1984). Defendants' Motion at 7.

The principles governing abstention are defined narrowly. As the Supreme Court recently reiterated, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Ankenbrandt, supra,* at —, 112 S.Ct. at 2215 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)). "Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.' " *Ankenbrant,* — U.S. at —, 112 S.Ct. at 2215 (quoting *Colorado River, supra,* 424 U.S. at 818, 819, 96 S.Ct. at 1246, 1247); *Burns v. Watler,* 931 F.2d 140, 145 (1st Cir.1991). "Indeed, the presence of a federal basis for jurisdiction may raise the level of justification needed for abstention." *Colorado River, supra,* 424 U.S. at 815 n. 21, 96 S.Ct. at 1245 n. 21 (citing *Burford v. Sun Oil Co., supra,*

319 U.S. at 318, 63 S.Ct. at 1099). In determining whether to abstain, "only the clearest of justifications will warrant dismissal." *Id.,* 424 U.S. at 819, 96 S.Ct. at 1247.

■ First, defendants urge the court to abstain in accordance with the principles of *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971), and its progeny. *See Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 2383, 60 L.Ed.2d 994 (1979) (applying *Younger* in state child-custody proceeding). Specifically, defendants assert that a *Younger* abstention is warranted to avoid interference by this court with a pending proceeding in state court regarding substantially the same issues. *Younger*-style abstention has typically been applied where plaintiffs sought to enjoin an ongoing state action. *Id.* 442 U.S. at 418, 99 S.Ct. at 2374; *Younger, supra,* 401 U.S. at 39, 91 S.Ct. at 748; *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 4, 107 S.Ct. 1519, 1522, 95 L.Ed.2d 1 (1987). However, plaintiffs have not asked this court to enjoin an ongoing state procedure or issue declaratory relief on a pending Connecticut court matter. *Cf., Malachowski v. City of Keene,* 787 F.2d 704, 709 (1st Cir.), *cert. denied,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986).[3]

The case (arguably ongoing) before the Connecticut court is one which apparently involves the custody of the minor child. Plaintiffs' section 1983 claim arises from the acts of the Salem, New Hampshire, police department and other events. Issues arising from these acts are distinct from those which might be before the Connecticut court. The matter of whether plaintiffs were deprived of their constitutional rights by events occurring in New Hampshire is not before the Connecticut court, which will hear the divorce and custody matters. Abstention is not warranted in the present case, under the *Younger* abstention doctrine, because this court's decision will "not enjoin or interfere with any state proceeding [which is] pending." *Rivera–Puig v. Garcia–Rosario,* 983 F.2d 311, 319 (1st Cir.1992). "The present situation is not the type contemplated by the *Younger* abstention doctrine." *Id.* at 320.

---

**3.** The First Circuit in *Malachowski* considered pro se plaintiffs' § 1983 claim in a child custody matter, applying *Younger* in abstaining from hearing plaintiffs' requests for injunctive and declaratory relief. However, the *Malachowski* court gave consideration to plaintiffs' damage claims before rejecting them for other reasons. *Malachowski,* 787 F.2d at 709.

Defendants next assert that *Burford*-style abstention is warranted where the federal suit was filed prior to effectuation of a divorce or child-custody decree where the suit depends on the determination of the status of the parties. The aspect of *Burford*-style abstention apparently raised by defendants is that which seeks a "[c]oncentration of judicial supervision" over a particular matter to avoid confusion over potentially conflicting conclusions. *Burford, supra,* 319 U.S. at 327, 63 S.Ct. at 1104. However, in the instant case, the federal suit has not been filed prior to the issuance of the divorce and child custody decrees, but was filed after these decrees. Furthermore, abstention here will arguably not lead to a concentration of judicial supervision over the instant matter in the Connecticut courts. The issue of whether these defendants, from Salem, New Hampshire, deprived plaintiffs of a liberty interest by giving physical custody of Rebecca to Harvey Rubin in New Hampshire without due process is unlikely to ever be heard by the Connecticut court which may hear the child-custody case. Furthermore, it would appear that the matter before the federal court in Connecticut is distinct from that before this court. For these reasons, *Burford*-style abstention is not warranted.

Lastly, defendants seek abstention because the subject matter of domestic relations is a basis for abstention in itself. Defendants argue that the domestic relations exception should be applied because plaintiff "retains the opportunity to contest the temporary custody decree at any time" in the Connecticut state court. However, plaintiffs' use of or failure to use state remedies does not preclude their action in federal court. "[I]t is firmly settled that exhaustion or resort to state remedies is *not* a prerequisite to a § 1983 claim." *Miller v. Hull,* 878 F.2d 523, 530 (1st Cir.1989) (emphasis in original) (citing, inter alia, *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)). Plaintiffs' ability to seek a remedy in state court is not a bar to pursuing their section 1983 claim for damages in federal court.

Relying on *Sutter, supra,* 639 F.2d at 843, defendants further assert that this court "should abstain from adjudicating claims that are closely related to, though not within the jurisdictional exception." Those cases cited by defendants to support this proposition are distinct from the instant case in that the plaintiffs in each cited case asked for relief directly affecting divorce, alimony, or child support. *See, e.g., id.* at 844 n. 4 (plaintiffs request custody); *Gonzalez Canevero v. Rexach,* 793 F.2d 417, 418 (1st Cir.1986) (plaintiff seeks property "interest by virtue of her former marriage to [the defendant]"); *Armstrong v. Armstrong,* 508 F.2d 348, 350 (1st Cir.1974) (plaintiff seeks determination of continuing "alimony and support" obligations). Plaintiffs herein have not asked this court to make a best-interest-of-the-child determination or to adjudicate any purely family-law issues. What plaintiffs have requested is a determination of whether their federally protected rights were infringed upon. Examining their claim in the light most favorable to the plaintiffs, this court cannot abstain merely as a result of the claim's proximity to a marriage. Accordingly, abstention is not warranted in the instant case.

### Conclusion

For the reasons set forth above, the court denies defendants' motion to dismiss (document no. 38).

SO ORDERED.