Wilma Jean COX; Sheila Gilliam; Barbara S. Starnes; Nancy Barger; Jackie Davis; Rhonda Sue Cox; Appellants,

v.

PLANNING DISTRICT I COMMUNITY MENTAL HEALTH AND MENTAL RETARDATION SERVICES BOARD, Appellees.

No. 81–1317.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1981.

Decided Feb. 4, 1982.

---

Janet H. Thurston, Abingdon, Va. (Copeland & Thurston, P.C., Abingdon, Va., on brief), for appellants.

Clifford P. Johnson, Kingsport, Tenn. (Edwin O. Norris, James W. Bradford, Jr., Hunter, Smith & Davis, Kingsport, Tenn., on brief), for appellees.

Before BUTZNER and SPROUSE, Circuit Judges, FIELD, Senior Circuit Judge.

SPROUSE, Circuit Judge:

Wilma Jean Cox, Sheila Gilliam, Barbara Starnes, Nancy Barger, Jackie Davis and Rhonda Sue Cox (appellants) appeal an order of the district court abstaining from exercising its jurisdiction and dismissing their action, brought pursuant to the provisions of 42 U.S.C. §§ 1983, 1985, against the Planning District I, Community Mental Health and Mental Retardation Services Board (Board).

While we agree that the district court properly abstained from exercising its jurisdiction, the appellants' action should have been retained on the district court's docket until the involved state-law issues were resolved in the state courts and, accordingly, we remand.

## I.

All six appellants are former employees of the Board. They were discharged when they absented themselves from work and met with a program supervisor to air their concerns regarding the operation of the Board's programs. After the appellants were terminated, they were advised by the Executive Director of the Board of their right to have the propriety of the discharge reviewed in a grievance arbitration proceeding. Each appellant, upon the com-

mencement of her employment, had received a personnel manual which, among other things, specified the grievance procedure to be followed. The panel which heard the final step of their grievance ordered all six appellants reinstated with full back pay and benefits. The Board then refused to recognize the panel order contending that it was contrary to the constitution and statutes of Virginia. Ten days after the grievance arbitration award, the Board petitioned a state trial court to stay its enforcement and for a writ of certiorari to review and vacate the award. On that same day, the appellants filed this action in the United States District Court for the Western District of Virginia, arguing that the Commonwealth of Virginia, acting through the Board, granted them a right to arbitration of their grievances, and that by refusing to implement the arbitration award, the Board deprived them of property rights in violation of the fourteenth amendment. Since the Board, on the other hand, contended that the laws of Virginia do not authorize grievance arbitration for Board employees and that the arbitration procedure in this case was violative of Virginia's statutory and constitutional law, it argued in the district court and on appeal that the appellants have no federally-protected property rights.

## II.

The abdication or postponement of federal court jurisdiction to accommodate state court adjudication, as expressed by the abstention doctrine, "is the exception, not the rule," *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Not completely unitary in concept, this doctrine traditionally has been utilized in three circumstances.[1] Abstention is appropriate in those cases presenting a federal constitutional question which may be mooted or presented in a different posture by a state court determination of relevant state

law. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *North v. Budig*, 637 F.2d 246, 249 (4th Cir. 1981). Second, abstention also is appropriate where there are presented difficult and complex questions of state law which directly affect important state policy concerns, and whose importance extends beyond the case at bar. In these situations, the exercise of federal jurisdiction would exert a disruptive influence on state efforts to establish a consistent policy with respect to matters of significant public concern. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Finally, abstention is mandated where, absent harassment, bad faith or a patently invalid state statute, litigants seek to invoke federal jurisdiction to restrain state criminal proceedings. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In recent years a fourth and more general principle has been recognized, one in which a concern for judicial economy justifies the exercise of a district court's discretion to abstain where there is on-going state-court litigation of the same issues of "extraordinary importance" implicated by the proposed federal suit. *See Colorado River Water Conservation District, supra*; C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 4247 (1979).

The procedural consequence of abstention—stay or dismissal of the action—is dependent upon the ultimate path of the litigation. A federal court abstaining due to the presence of an unsettled question of state law contemplates that the case may return to federal court for the resolution of federal issues in light of the state court's determination. *Pullman, supra*. In this situation, the district court should merely stay the proceeding, and retain it on its docket. On the other hand, if federal abstention is justified by the belief that the exercise of jurisdiction would impermissibly affect a complex state administrative scheme or im-

---

1. *Compare Colorado River Water Conservation District, supra* (three types of abstention) *with Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 477, 97 S.Ct. 1898, 1902, 52 L.Ed.2d 513 (1977) (two "primary" types of federal abstention). *See generally* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4241, nn. 57–64 (1978).

plicate federalism concerns, as in *Burford* and *Younger*, or that the determinative issues will unfailingly be resolved within the parameters of the state-court litigation, *Colorado River Water Conservation District, supra,* then dismissal is proper, as no further action by the district court is anticipated. *See generally,* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 4247 (1978). It is against this background that we examine the case at bar.

■ If the appellants have a protected property interest it is, of course, one created by the State of Virginia. Given the unsettled status of Virginia law regarding the rights of the employees involved in this case, however, it is entirely possible that the appellants possessed no entitlement to grievance arbitration proceedings, and therefore no property rights protected by the fourteenth amendment. Such a conclusion would make unnecessary the determination of the federal constitutional question. Substantively, then, the district court properly abstained in these circumstances; the more difficult question, however, is whether the appellants' action should have been dismissed from the docket, or merely stayed pending the completion of state proceedings. This determination is critical, as it could affect the future resolution of the involved federal question—whether the Board's refusal to implement the arbitration award was violative of the fourteenth amendment.

There is present in the case *sub judice* primarily an unsettled question of state law, *i.e.,* the status under Virginia law of the involved arbitration award—whether it is recognized by state law in such a way as to create a property interest, *see Board of Regents v. Roth,* 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). This case, moreover, does not involve an elaborate and comprehensive scheme of state regulation and review, *Burford, supra,* that requires complete abdication of jurisdiction by the federal district court. *See Donohoe Construction Co. v. Montgomery County Council,* 567 F.2d 603, 607 n.12 (4th Cir. 1977), *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1148

(1978); *cf. AFA Distributing Co. v. Pearl Brewing Co.,* 470 F.2d 1210 (4th Cir. 1973). It is true that enforcement of the grievance arbitration award might touch upon "sensitive issues" of state policy. The relationship between a state and its employees, however, is not a talismanic one requiring complete deference by the federal courts, *cf. National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and there are instances in which the "sensitivity" of state problems might be outweighed by the more vital constitutional policies expressed in the fourteenth amendment.

Since resolution of the state law issue may be determinative of the federal constitutional question, and the procedural posture is similar to the one in *Pullman,* that decision counsels abstention but retention of the action by the district court until the conclusion of state proceedings. It is clear from an analysis of the issues that dismissal of the action would not serve to avoid interference with a sophisticated state regulatory scheme, and could serve to deprive the appellants of an opportunity to litigate their federally-protected interests. It is conceivable that the Virginia courts would determine that the Board's procedure is constitutionally and statutorily permissible, and at the same time deny the appellants relief on other grounds. State statutes of limitations and rules regarding their tolling could cut off the appellants' ability to proceed in federal court. *See Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); Va.Code §§ 8.01–229 E, 8.01–243 (1981 Supp.). Therefore, the order dismissing the action is reversed and the cause remanded to the district court with directions to reinstate it on its docket, and stay the action pending disposition of the state court proceedings.

REVERSED AND REMANDED.