**Julia Mary BELIVEAU and Mary D. Beliveau, Plaintiffs,**

**v.**

**John B. BELIVEAU, Defendant.**

**Civ. No. 86–0388–P.**

United States District Court, D. Maine.

March 17, 1987.

John S. Whitman, Portland, Me., for plaintiffs.

Charles H. Abbott, Skelton, Taintor, Abbott & Orestis, Auburn, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

GENE CARTER, District Judge.

Plaintiff Mary Beliveau and Defendant John Beliveau were divorced in 1981 after an 18–year marriage during which they had three children, the eldest of whom is Plaintiff Julia Beliveau. Their divorce decree incorporated a settlement agreement in which, among other obligations, the Defendant agreed that under certain circumstances he would pay for four years of post-high school education for each of his children.[1] Plaintiffs allege that Defendant has breached this obligation.

After this suit was filed, the Court noted a probable lack of subject matter jurisdiction and *sua sponte* ordered the parties to file with the Court memoranda of law stating their positions as to whether the Court properly can or should exercise jurisdiction in this case. *See Insurance Corp. v. Compagnie Des Bauxites*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). After a careful review of the scholarly memoranda submitted by both counsel, the Court concludes that abstention is the best course in this case.

■ Plaintiffs have alleged that they are citizens of Pennsylvania, that the Defendant is a citizen of Maine, and that the amount in controversy exceeds the sum of $10,000. Although these factors would

---

1. Defendant agreed to pay for "reasonable expenses" including, but not limited to, tuition, board, room, and books. His obligation is conditioned upon each child continuing his or her education uninterrupted, except by compulsory military service or illness. Unless such an interruption occurs, the Defendant's obligation is to terminate as each child reaches the age of twenty-three. The parties further agreed that each child will make reasonable efforts to obtain financial aid and that the parties will jointly approve any institution before the payment of any educational expenses.

normally be enough to confer diversity jurisdiction under 28 U.S.C. § 1332(a), there is a serious question as to whether this case falls within the "domestic relations exception" to such jurisdiction. Cases clearly fall within the exception when they involve an adjustment of family status such as an action for divorce and alimony, an action for child custody, or an action seeking to establish paternity and obtain child support. *See Gonzalez Canevero v. Rexach,* 793 F.2d 417 (1st Cir.1986); *Armstrong v. Armstrong,* 508 F.2d 348 (1st Cir.1974); *Bates v. Bushey,* 407 F.Supp. 163 (D.Me. 1976). The First Circuit has recently suggested in dicta that liquidated obligations such as accrued alimony or property settlements may be enforced in federal court even if they originated in an action involving domestic relations, *Gonzalez Canevero,* 793 F.2d at 418. However it is clearly established in this circuit that if a case is closely related to a matter of divorce or alimony, then the "federal court—even when it has jurisdiction—may abstain for reasons of comity and common sense from cases better handled by the state courts

having authority over matrimonial and family matters." *Armstrong,* 508 F.2d at 350.

■ The Court concludes that if the current case involved liquidated damages, if it were a contract case unrelated to any ongoing domestic relations controversy, and if there were no imminent state court action that would be affected by the *res judicata* or estoppel effect of this Court's ruling,[2] then action by this Court might be proper and not precluded by the domestic relations exception. However, that is not the case. The sum to which the Plaintiffs are entitled if they prevail is not certain or fixed: the settlement agreement does not provide for the payment of a sum certain for education, but instead obligates the Defendant to pay "reasonable expenses" which are exemplified by a nonexclusive list and which obligation may be reduced or voided under certain circumstances. In addition, this matter is inextricably connected with an ongoing domestic relations dispute and with two cases currently pending in Androscoggin County Superior Court.[3]

**2.** In *Armstrong,* another case in which related actions were pending simultaneously in state and federal courts, the First Circuit stated:

> There is no reason to proliferate the number of available forums for litigation rooted in the duties of former spouses to one another and to their family.... [I]t would seem unwise for a federal court to issue orders which, because of *res judicata* or estoppel, might severely restrict the ability of the appropriate state court to reach an equitable result.
> 508 F.2d at 350.

**3.** On September 16, 1986, John Beliveau filed in state court a motion to modify the divorce decree or, in the alternative, for declaratory judgment declaring the rights and duties of the parties. On October 17, 1986, Mary Beliveau filed a motion to enforce the divorce decree and alleged five violations of the decree including the failure to pay educational expenses that is the subject of the action she and Julia Beliveau brought in federal court on December 4, 1986.

The Plaintiffs argue that in *Wood v. Wood,* 407 A.2d 282 (Me.1979), the Maine Law Court held that any modification of a divorce decree could be made retroactive only to the date when the application for modification was filed. They contend that this holding eliminates the possibility that the state court would grant the defendant any modification of obligations that

accrued under the divorce decree prior to September 16th and that, therefore, this Court should not be concerned about the *res judicata* or estoppel implications of assuming jurisdiction over this case. For several reasons, the Court is not persuaded. First, the holding in *Wood* is not absolute, but includes an exception that can be triggered by a child reaching the age of majority; Plaintiff Julia Beliveau is twenty-one years old, which at least raises the possibility that this case may fall within the *Wood* exception. Second, the Maine state courts still have a range of options even when they find a default on an accrued support obligation. The Court held in *Wood:*

> Nothing in this opinion precludes the divorce court from refusing to use its contempt power to enforce the payment of arrearages where the obligor parent lacks present financial ability or where application of the contempt sanction would otherwise result in undue hardship. Unlike the cancellation of arrearages, such an action by the court does not excuse the underlying support obligation.

*Wood,* 407 A.2d at 287, n. 4.

Finally, the Defendant has alleged in his Motion to Modify Divorce Decree that several aspects of the decree are void and unenforceable. If the state court agrees, it may find that *Wood's* injunction against retroactive modification does not apply to obligations that were unenforceable to begin with.

Plaintiffs have argued that because Defendant is a sitting judge in the Maine state judiciary, it may be difficult to obtain a remedy in state court; they have pointed out that one justice of the superior court has already recused himself. The Plaintiffs admit in their brief, however, that they "cannot yet demonstrate" that they are without a remedy in the state courts. The Court therefore believes that it would be premature to address the issue. If at some later date the Plaintiffs demonstrate that they cannot obtain a state court forum, then the Court will at that time examine the effect of such a development on comity considerations.

Accordingly, it is ORDERED that the Defendant's Motion to Dismiss be, and it is hereby, GRANTED.